## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DOUGLAS BAUER, as father and next friend of E.B.,
a minor child, and HALEIGH BAUER,

     Plaintiffs,

v.                                                                Case No: 8:21-cv-2698-KKM-AEP

CHAD CHRONISTER, in his official capacity
as Sheriff of Hillsborough County, Florida,

     Defendant.

_____

## <u>ORDER</u>

Douglas and Haleigh Bauer bring two claims against Chad Chronister, acting in his official capacity as the Sheriff of the Hillsborough County Sheriff's Office, which is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quotation omitted). The Bauers allege that the Hillsborough County Sheriff's Office (HCSO) violated their rights under the Due Process Clause of the United States Constitution and acted negligently under Florida law. The HCSO now moves to dismiss the Complaint. Because the Bauers fail to state a claim, the motion is granted. The Bauers may amend their complaint.

## I.      BACKGROUND

Sometime in 2011, Kelly Garrison married Kelly McDonald, Jr. (Doc. 1 ¶ 11.) During their marriage, McDonald harassed Garrison by hacking her email account, threatening to "take care" of her male friends, prohibiting her from "socializ[ing] for fear that other men would hit on her," and hiding a recording device in her purse. (*Id.* ¶ 13.) Garrison later divorced McDonald. (*Id.* ¶ 15.) Nonetheless, McDonald continued to behave in an "alarming and threatening manner" such as telling Garrison that he would "get [her] back for [the divorce] when [she] least expected it." (*Id.* ¶ 16 (first and third alterations in original).)

On December 30, 2017, McDonald attacked Garrison and attempted to kill her. (*Id.* ¶ 17.) A neighbor intervened and McDonald fled. (*Id.*) Prompted by the attempt on her life, "Garrison filed a petition" in Thirteenth Judicial Circuit for Hillsborough County seeking "injunctive relief to ensure her safety and distance from McDonald." (*Id.* ¶¶ 18, 19.) The court granted the petition and "ordered McDonald to stay at least 300 feet away from Garrison and to surrender any firearms to the Hillsborough County Sheriff's Office." (*Id.* ¶ 19.)

After the 2017 attack, the HCSO obtained an arrest warrant for McDonald but intentionally and "unreasonably did not undertake reasonable efforts to locate and arrest McDonald." (*Id.* ¶ 20.) The unwritten policy of the HCSO was to "not treat cases of

domestic violence as high priorities." (*Id.*) That policy required officers to "subordinate—if not outright ignore—the need to protect victims of domestic violence such as Garrison from offenders at large like McDonald." (*Id.* ¶ 21.) As part of this policy, the HCSO "purposely and repeatedly failed to create and maintain proper records regarding wanted subjects involving domestic violence," permitting dangerous people to evade detection. (*Id.* ¶ 34.) Also pursuant to the policy, the HCSO would admonish and threaten employees who expressed concern about the policy and would delay obtaining warrants for dangerous individuals. (*Id.* ¶¶ 35, 38.)

As part of the HCSO policy of indifference toward domestic violence, the HCSO allocated too few resources—"financially and in terms of human capital—to locate McDonald in a timely manner." (*Id.* ¶ 39.) Because of the HCSO policy of indifference, McDonald "evaded detection and arrest for many months." (*Id.* ¶ 41.) One particular example occurred in February 2018. "McDonald was seen outside the school where Garrison worked and [where] her daughter was in daycare." (*Id.* ¶ 42.) Although HCSO was notified of McDonald's appearance, it "took no additional reasonable and timely steps" to locate him. (*Id.*)

In April 2018, McDonald—still on the loose at that time—tracked Garrison to her sister's home in Georgia where she had fled with her two daughters, Haleigh Bauer and E.B., who she had from her previous marriage to Douglas Bauer. (Doc. 1 ¶¶ 9–11, 22–

23.) Tragically, McDonald shot and killed Garrison in front of her daughters. (*Id.* ¶ 24.) He also shot Haleigh Bauer, who survived "with serious injuries." (*Id.* ¶¶ 25, 27.) Finally, McDonald shot and killed Garrison's sister and then killed himself. (*Id.* ¶ 25.) E.B. escaped. (*Id.* ¶ 26.)

Douglas Bauer—on behalf of E.B.—and Haleigh Bauer sue Chad Chronister in his official capacity as the Sheriff of Hillsborough County. (Doc. 1.) The Bauers bring a 42 U.S.C. § 1983 claim for deprivation of their constitutional rights and a negligence claim under Florida law. The HCSO now moves to dismiss.

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.   ANALYSIS

The Bauers bring two claims against the HCSO, one federal and one state. Because the Bauers allege no constitutional violation or an applicable duty arising under Florida law that the HCSO might have breached, both claims are dismissed. Nonetheless, the Court grants the Bauers' request to amend.

### A. The Bauers Fail to Plead a Violation of Garrison's Constitutional Rights

In Count I, the Bauers allege that the HCSO policy of indifference toward domestic violence was a violation of their due process rights under the Fifth and Fourteenth Amendments. Because the former does not apply to Florida officials, only the Fourteenth

Amendment violation is feasible. The HCSO moves to dismiss for failure to state a claim under that amendment.[1]

The Due Process Clause of the Fourteenth Amendment prohibits any State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. That clause requires that States "provide a guarantee of fair procedure in connection with any deprivation of life, liberty or property." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). As interpreted by the Supreme Court, the clause also contains a "substantive" component that "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis omitted). This second component of the Due Process Clause "has long been controversial." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022).

The Bauers allege that the HCSO violated their due process rights by failing to adequately locate and arrest McDonald before McDonald harmed the Bauers and killed their mother. As a starting matter, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against

---

[1] The HCSO also contends that the Bauers' Complaint should be dismissed as an impermissible shotgun pleading. Although the Complaint likely survives that standard, the Bauers should be mindful when repleading to avoid adopting allegations from other counts that do not support the elements and factual allegations in subsequent counts.

invasion by private actors," such as McDonald. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("Nor does history support such an expansive reading of the constitutional text."). But the government's failure to protect might constitute a violation of the Due Process Clause under two circumstances. First, if that failure was "arbitrary, or conscience shocking, in the constitutional sense," it might rise to a violation of so-called substantive due process. *Collins*, 503 U.S. at 128; *White v. Lemacks*, 183 F.3d 1253, 1257–58 (11th Cir. 1999) (describing that standard as "somewhat amorphous"). Or second, the government might violate procedural due process when the plaintiff possesses a property interest in enforcement of a restraining order or injunction and the government provides too little process to protect it. *See Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 757–66 (2005) (explaining that federal constitutional standard but concluding that Colorado law did not create a property interest in the enforcement of the plaintiff's restraining order). The Bauers argue that their allegations satisfy both routes. They are wrong.

### 1.   The HCSO's Conduct Was Not Conscience-Shocking

The Bauers argue that the HCSO's failure to protect Garrison and arrest McDonald was "arbitrary [and] conscience shocking." *Collins*, 503 U.S. at 128. To make that showing in a non-custodial setting, the Bauers must allege—"[a]t the very least"—"deliberate indifference to an extremely great risk of serious injury," *Doe v. Braddy*, 673 F.3d 1313,

1318 n.4 (11th Cir. 2012), although that level of culpability might still fall short, *see*
*Waldron v. Spicher*, 954 F.3d 1297, 1310 (11th Cir. 2020). The Bauers assert that a police
force "who knows of a violent offender who attempted to murder a woman but purposely
failed to take reasonable efforts to arrest the offender or further protect the victim,"
including the arrest of the offender "when that offender violates a domestic violence
injunction," shocks the conscience. (Doc. 12 at 9 n.4.)

But "when someone not in custody is harmed because too few resources were
devoted to their safety and protection, that harm will seldom, if ever, be cognizable under
the Due Process Clause." *Lemacks*, 183 F.3d at 1258. Critically, the Bauers do not allege
in their Complaint that the HCSO intended to hurt them, only that the HCSO
intentionally gave unreasonably low attention and resources to apprehending McDonald.
*See id.* (noting that the plaintiffs did not "allege that the defendants had intended to harm
them or their relatives"). That allegation does not "shock the conscience" because "resource
allocation" is the province of "locally elected representatives." *Id.* And state officers'
deliberate indifference alone to the safety or well-being of a plaintiff, outside of a custodial
context, has never been sufficient to satisfy the shock-the-conscience standard. *See*
*Waldron*, 954 F.3d at 1310 ("No case in the Supreme Court, or in this Circuit, or in the
Florida Supreme Court has held that recklessness or deliberate indifference is a sufficient

level of culpability to state a claim of violation of substantive due process rights in a non-custodial context.").

The Bauers disagree, but counter only with a footnote that compares the HCSO's conduct of allocating unreasonably low resources to apprehension of domestic violence offenders to the "forced pumping of a detained suspect's stomach." (Doc. 12 at 9 n.4 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952) (holding that the "forcible extraction" of stomach contents is conduct that "shocks the conscience" in a constitutional sense)). The comparison falls flat on a quick review. In *Rochin*, the police themselves performed the actions against a detained individual which the Court concluded "shock[ed] the conscience." 342 U.S. at 172. Especially because the "shock the conscience" test is to be "narrowly interpreted and applied," *Lemacks*, 183 F.3d at 1259, and the HCSO neither directly caused the Bauers harm nor had custody over those injured, *Rochin* is simply inapposite.

### 2.  The Bauers Lacked a Property Interest in Garrison's Injunction

The Bauers primarily argue that the HCSO violated the Due Process Clause because Florida law conveyed a property interest to Garrison in the injunction against McDonald and the HCSO failed to arrest McDonald as mandated by the injunction. For a person to enjoy a "property interest in a benefit," she must "have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). For

9

a person to have a property interest in the enforcement of a restraining order or injunction, state law must make "enforcement of [the order] *mandatory.*" *Town of Castle Rock*, 545 U.S. at 760. Thus, the Bauers must establish that Florida law required the HCSO to enforce the injunction. They have not done so.[2]

Both the statute granting authority for officers to arrest individuals violating a domestic violence injunction and background Florida law indicate that the HCSO possessed discretion over whether to enforce the injunction against McDonald by arresting him. And because the HCSO exercised discretion independent of a duty to arrest or otherwise detain McDonald, Garrison and the Bauers lacked an entitlement to that outcome and therefore cannot have been deprived of due process by the HCSO's failure to effect it.

---

[2] The question of whether a resident of Florida enjoys a property interest in the enforcement of the laws has reached the Eleventh Circuit several times. Despite the Eleventh Circuit repeatedly performing the relevant analysis and concluding that the plaintiff lacked a property interest, it declined to publish the opinions. *See Crystal Dunes Owners Ass'n Inc. v. City of Destin*, 476 F. App'x 180, 184 (11th Cir. 2012) (per curiam); *Taylor v. Alexander*, 580 F. App'x 866, 867 (11th Cir. 2014) (per curiam); *Harder v. Hunter*, 572 F. App'x 904, 907 (11th Cir. 2014) (per curiam); *Barth v. McNeely*, 603 F. App'x 846, 849 (11th Cir. 2015) (per curiam); *see also Wilborn v. Jones*, 761 F. App'x 908, 911 (11th Cir. 2019) (per curiam) (concluding that a plaintiff lacked a property interest in the enforcement of Alabama's laws). Because unpublished opinions "are not considered binding precedent," the Court analyzes the question as an original matter. *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022) (quoting 11th Cir. R. 36-2) (reminding district courts to not "simply cite to one of [the Eleventh Circuit's] unpublished opinions as the basis for its decision without separately determining that it is persuasive").

Florida law bestows discretion on law enforcement officers to apprehend and arrest violators of domestic violence injunctions. Section 741.30(1) gives individuals "a cause of action for an injunction for protection against domestic violence." An injunction against domestic violence "shall, on its face, indicate that . . . [l]aw enforcement officers *may* use their arrest powers under s. 901.15(6) to enforce the terms of the injunction." § 741.30, Fla. Stat. (emphasis added). Section 901.15(6), in turn, provides that "[a] law enforcement officer *may* arrest a person without a warrant when . . . [t]here is probable cause to believe that the person has . . . violate[d] an injunction for protection entered pursuant to s. 741.30." (Emphasis added). Likewise, another Florida statute, which discusses how police should respond to domestic violence complaints, states that officers, after concluding that probable cause exists that "an act of domestic violence has been committed[,] . . . *may* arrest the person or persons suspected of its commission." § 741.29(3) (emphasis added). Notably, each statute uses the permissive language of "may," indicating that an officer retains discretion to choose whether to arrest a person who violates a domestic violence injunction. *See Biden v. Texas*, 142 S. Ct. 2528, 2532 (2022) ("This Court has 'repeatedly observed' that 'the word "may" clearly connotes discretion.'"); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 11, at 112 (2012) (explaining that "may" is "permissive"). Moreover, other portions of Section 741.30 use the mandatory term "shall," indicating that, when the Florida legislature intends to

11

require officers to take action, it uses mandatory language. *See* § 741.30(9)(b) (requiring that, if the subject of an injunction "is arrested by a law enforcement officer . . . , [he] *shall* be held in custody until brought before the court"); *see also Simpson v. City of Miami*, 700 So. 2d 87, 88 (Fla. 3d DCA 1997) (explaining that, after an officer has arrested a person who violated an injunction, he lacks discretion to release him).

Nonetheless, Florida law mandates law enforcement take action on behalf of a victim of domestic violence in one circumstance. *See* § 741.31(1), Fla. Stat. Where "there has not been an arrest," the petitioner may seek aid from the clerk of the circuit court, who must assist the petitioner in writing an affidavit or point the petitioner to another office which would provide such assistance. *Id.* "If the affidavit alleges a crime has been committed," the assisting office must forward the affidavit "to the appropriate law enforcement agency for investigation," who must then "complete their investigation and forward the report to the state attorney" within twenty days. § 741.31(2). The Bauers do not allege that Garrison went through this procedure to alert the HCSO of McDonald's behavior. But even if she had, the statute still requires that the HCSO only investigate—not that the HCSO must arrest McDonald. Moreover, even the mandatory "shall" language in this part of the statute is likely insufficient to give Garrison a property interest in an investigation, given the "deep-rooted nature of law-enforcement discretion, even in

the presence of seemingly mandatory legislative commands." *Town of Castle Rock*, 545 U.S. at 761.

Background principles of Florida law confirm that the HCSO retained discretion to decide whether to enforce the injunction and arrest McDonald. Ordinarily, law enforcement officers possess discretion over when to effect an arrest. *See Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985). As such, their "responsibility to enforce the laws for the good of the public [does not] engender a duty to act with care toward any one individual." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 935 (Fla. 2004). That ordinary rule is subject to a few limited exceptions. Those exceptions are inapplicable to the facts as alleged here for the reasons explained below as to why Count II fails to state a claim. But more fundamentally, they almost certainly cannot give rise to a "legitimate claim of entitlement" to affirmative action from law enforcement—something akin to a property right—that satisfies the strictures of a potential due process claim. *Roth*, 408 U.S. at 577.

In sum, the HCSO retained discretion over whether to arrest violators of domestic violence injunctions, undermining any claim that the HCSO failed to observe the due process of law in how it treated Garrison's injunction.

## B. The Bauers Fail to Allege an Applicable Duty Under Florida Law

In Count II, the Bauers allege that the HCSO owed them a duty to act reasonably and acted negligently, breaching that duty. But the Bauers fail at the first step. To succeed

on a negligence claim, a plaintiff must allege that the defendant owed the plaintiff a duty "to conform to a certain standard of conduct." *Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 102 (Fla. 4th DCA 2017) (quotation omitted). When enforcing the laws, law enforcement officers owe a duty to an individual—rather than the public at large—only when they assume a "special duty with regard to that person." *Pollock*, 882 So. 2d at 935. Officers may also owe a duty when they are acting outside of their role as enforcers of the law. But the Bauers fail to allege either that the HCSO assumed a special duty to them or Garrison. And although the Bauers allege that the HCSO negligently failed to train enough officers—a function potentially distinct from the HCSO's law enforcement role—that claim is barred by sovereign immunity.

The Bauers offer no allegations indicating that the HCSO assumed a special relationship with either them or Garrison. A special relationship can arise in two ways. First, a special relationship arises when law enforcement gives the victim "an express promise or assurance of assistance," the victim "justifiabl[y] reli[es] on the promise," and the victim suffers harm "because of the reliance upon the express promise." *Pierre v. Jenne*, 795 So. 2d 1062, 1064 (Fla. 4th DCA 2001); *accord Jordan v. Nienhuis*, 203 So. 3d 974, 977 (Fla. 5th DCA 2016). The Bauers allege none of these elements. Instead, the Bauers insist that the HCSO "made them—*specifically, rather than the public at large*—more

14

vulnerable to harm." (Doc. 12 at 9.) But they do not support this theory with any factual allegations in their Complaint.

The Bauers instead rely on a concurring opinion issued by a Florida intermediate court, which opined that a "special relationship existed between [the victim] and the [police d]epartment by virtue of the injunction issued by the court for [the victim's] protection." *Simpson*, 700 So. 2d at 89 (Shevin, J., specially concurring). A concurrence does not establish the law, nor is it persuasive here. The concurrence principally argues that a special relationship existed between the victim and the police because the very purpose of the Florida statute permitting injunctions against people who commit domestic violence would be moot if the police had no mandatory obligation to enforce it. *See id.* Not so. Even if enforcement of the injunction was optional for the HCSO, it was not a nullity. Instead, "it rendered certain otherwise lawful conduct by [McDonald] both criminal and in contempt of court." *Town of Castle Rock*, 545 U.S. at 760; *see* § 741.31(3) (indicating when a court might hold a person subject to an injunction in contempt); § 741.31(4)(a) (listing conduct that qualifies as criminal for a person subject to an injunction).

A second context where law enforcement officers assume a special relationship with a person is when they "become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." *Pollock*, 882 So. 2d at

935. But this theory of liability is based on the premise that a police officer "assume[d] control over a particular situation or individual or group of individuals." *Id.* Thus, where officers "have not arrived on the scene or assumed any degree of control over the situation, the 'zone of risk' analysis has no application." *Id.* at 936 (citation omitted). Here, the Bauers do not allege that the HCSO ever assumed control of arresting McDonald or otherwise arrived on any "scene" where it must have performed its duty reasonably. Instead, they allege that the HCSO failed to act. Thus, the HCSO cannot be liable under a "zone of risk" theory. *See id.*

Law enforcement officers may also owe a duty when they are acting outside of their law-enforcement role. Thus, when law enforcement officers undertake to "provid[e] professional, educational, and general services for the health and welfare of the citizens," they may owe a duty to individual persons. *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985). These services generally include "medical and educational services" and government actors might be liable, for example, where they engage in "[m]alpractice in the rendering of specific medical services." *Id.* at 921. Law enforcement officers assume this kind of duty when they are not engaging in the enforcement of the laws for the general public and instead "affirmatively [seek] to provide a service," such as a safety check prompted by a 911 call, "to a specific individual." *Wallace v. Dean*, 3 So. 3d 1035, 1049 (Fla. 2009). The Bauers contend that the HCSO engaged in

16

such services when it learned of McDonald's conduct and Garrison's injunction. But the HCSO never "affirmatively sought" to enforce Garrison's injunction or secure her individual safety. Instead, the Bauers allege that the HCSO was too passive and gave too little attention to her safety. Thus, the HCSO never undertook a duty to provide a service to Garrison or the Bauers. *See Pollock*, 882 So. 2d at 935 n.7 (concluding that the highway patrol's duties could not be categorized as "general services for the health and welfare of the citizenry"). Instead, the HCSO was "merely a police agency and its relationship with [the Bauers] is . . . that of a police agency to the victim of a crime." *Dep't of Health & Rehab. Servs. v. Yamuni*, 529 So. 2d 258, 261 (Fla. 1988) (concluding that a state agency engaged in general services by contrasting it with the relationship police have with crime victims).

Government officials may also act outside their role as enforcers of the law when they "build[] or take[] control of property or an improvement," and may owe a duty of care when acting in this role. *Trianon Park Condo. Ass'n, Inc.*, 468 So. 2d at 921. Assuming that law enforcement officers—as opposed to other governmental entities—can sometimes assume this role, nothing in the Bauers' Complaint alleges that the HCSO was operating in this capacity.

The Bauers also allege that the HCSO failed to adequately train enough officers. But they fail to allege facts indicating that Florida waived its sovereign immunity in this

17

context. Although Florida is ordinarily immune from tort liability, the State has waived its sovereign immunity in some circumstances. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). One of those circumstances is when a government actor is acting "operationally"—that is, implementing a policy decision. *Id.* In contrast, Florida has not waived its sovereign immunity for lawsuits premised on government actors acting within their discretion. *Id.* The burden is on the plaintiff to plead how the State waived its sovereign immunity. *See City of Gainesville v. State, Dep't of Transp.*, 778 So. 2d 519, 530 (Fla. 1st DCA 2001) ("Our supreme court has held that facts on which a waiver of sovereign immunity depends must be pleaded in the complaint."); *see also Jones v. Fransen*, 857 F.3d 843, 855 (11th Cir. 2017) (adopting Georgia's allocation of the burden of demonstrating waiver). The Bauers fail to do so here.

The Bauers allege that the HCSO "knowingly failed to adequately train, staff, and supervise sufficient numbers of officers." (Doc. 1 ¶ 40.) As a starting matter, this allegation is likely conclusory and not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 679. But even if presumed true, that allegation does not render the HCSO's actions "operational" and thus within Florida's waiver of sovereign immunity. Discretionary acts are those that (1) "necessarily involve a basic governmental policy, program, or objective," (2) are "essential to the realization or accomplishment of that policy, program, or objective," (3) that "require the exercise of basic policy evaluation, judgment, and expertise on the part

18

of the governmental agency involved," and (4) in which "the governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision." *Trianon Park Condo. Ass'n, Inc.*, 468 So. 2d at 918 (quotation omitted).

Both training and resource-allocation decisions are discretionary. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (dismissing a claim for negligent training because the plaintiff "merely challenge[d] the content of the [training] program"); *Town of Gulf Stream v. Palm Beach Cnty.*, 206 So. 3d 721, 726 (Fla. 4th DCA 2016) ("[T]he allocation of resources and budget management . . . [are] quintessentially . . . discretionary, planning-level decision[s] that [are] shielded by sovereign immunity."). Likewise, the decision to create a position—and by extension, how many positions to create—is discretionary. *See Willis v. Dade Cnty. Sch. Bd.*, 411 So. 2d 245, 246 (Fla. 3d DCA 1982). Hiring and training are both discretionary because deciding how many resources to allocate toward staffing and how to train them require balancing of priorities— necessarily "involving a basic governmental policy, program, or objective." *Trianon Park Condo. Ass'n, Inc.*, 468 So. 2d at 918. Likewise, how many officers to hire and how to train them is "essential to the realization or accomplishment" of such a balancing of resources." *Id.* Finally, the HCSO is equipped with and authorized to decide how best to

19

allocate its resources and train its officers. *See Mercado*, 407 F.3d at 1162; *Town of Gulf Stream*, 206 So. 3d at 726.

The Bauers concede the above but contend that the HCSO engaged in an operational act by deviating from official policy by inadequately training and staffing. Whatever merit this argument may have in an appropriate case, the Bauers never allege any official policy regarding training and staffing from which the HCSO deviated. Thus, it is merely a "possibility" that the HCSO's decision as to how many officers to train and staff was a secondary decision in implementing the official policy, insufficient to "nudge[]" the Bauers' claim close enough to plausibility. *Iqbal*, 556 U.S. at 678, 680.

The Bauers offer one final argument in an attempt to show that the HCSO is liable for McDonald's actions against Garrison. Specifically, the Bauers argue that the HCSO can be derivatively liable McDonald's heinous behavior. A person can be "derivatively liable" for the wrongful conduct of another when that other actor's "conduct was the direct cause of injury." *Barnett v. Dep't of Fin. Servs.*, 303 So. 3d 508, 514 (Fla. 2020). But before someone can be derivatively liable for another's tortious actions, he himself must have first committed a tort. *See Main St. Ent., Inc. v. Guardianship of Faircloth*, No. 1D19-4058, 2022 WL 390775, at *3 (Fla. 1st DCA Feb. 9, 2022), *reh'g denied* (June 22, 2022). Thus, the HCSO could potentially be liable for McDonald's tortious conduct if the Bauers alleged that the HCSO itself committed a tort. But, as discussed above, the Bauers fail to

allege any duty that the HCSO owed and breached. Nor do they allege that the HCSO committed any other tort. As such, the HCSO cannot be derivatively liable for McDonald's actions.

The Bauers thus fail to state a claim for negligence.

## C. Request for Leave to Amend

In their response to the HCSO's motion to dismiss, the Bauers twice request leave to amend under Federal Rule of Civil Procedure 15. (Doc. 12 at 6 n.2, 18.) First, they ask for leave to amend to add a claim under the Equal Protection Clause, a claim they contend their Complaint "implicitly raised." (*Id.* at 6 n.2.) The Complaint did not "implicitly raise[]" an Equal Protection Clause claim and quite clearly alleged that the HCSO violated the Bauers' "constitutional rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution." (*Id.* ¶ 41.) Second, they ask for leave to amend the entire complaint and state that the request is not "in bad faith, for purposes of delay, or for any suspect reason." (Doc. 12 at 18.)

The Court grants the Bauers' request for leave to amend. Because the Bauers have not yet amended their complaint and no responsive pleading has been filed, they still have the right to amend as a matter of course. *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010) (noting that a motion to dismiss "is not a responsive pleading" for purposes of Rule 15). Moreover, the HCSO has not filed any request for a sur-reply or

otherwise indicated it opposes the request for amendment. Accordingly, the Court grants the request to amend.

## IV.   CONCLUSION

The Bauers allege two claims, one federal and one state. Neither state a claim for relief and both are dismissed. But the Court also grants the Bauers' request to amend their Complaint. Accordingly, the following is **ORDERED**:

1.   The HCSO's Motion to Dismiss is **GRANTED**. (Doc. 7.)

2.   The Court **GRANTS** the Bauers' request for leave to amend. The Bauers may file an amended complaint no later than **August 12, 2022**.

**ORDERED** in Tampa, Florida, on July 29, 2022.

Kathryn Kimball Mizelle
United States District Judge